## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **DISTRICT HOSPITAL PARTNERS, L.P.,** d/b/a The George Washington University Hospital, et al. | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Civil Action No. 11-0116 (ESH)** |
| **KATHLEEN SEBELIUS,** Secretary, Department of Health and Human Services | ) ) ) ) | |
| **Defendant.** | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court are plaintiffs' motions to compel the Secretary to complete the administrative record by including six classes of materials, and to stay the briefing of the parties' cross-motions for summary judgment. For the reasons stated herein, the motion to compel is granted in part with regard to the public comment submitted by the Federation of American Hospitals and the February 13, 2003 Outlier Correction Interim Final Rule, and the motion to stay is denied as moot.

## BACKGROUND

Plaintiffs, who own and operate 186 hospitals that participate in the Medicare program, sued the Secretary of the Department of Health and Human Services ("Secretary") in her official capacity, alleging that her methodology for setting thresholds for outlier payments to their hospitals, under the Medicare Act, 42 U.S.C. § 1395 *et seq.*, was arbitrary and capricious for the Inpatient Prospective Payment System ("IPPS") rules for federal fiscal years ("FFYs") 2004, 2005, and 2006. (*See* Mem. Op., July 5, 2011 [Dkt. No. 14] at 1.) The factual and procedural

history of this case is laid out in this Court's earlier Memorandum Opinions, and it need not be repeated here.  (*See id.* at 6-7; *see also* Mem. Op. and Order, Sept. 10, 2013 [Dkt. No. 111] at 2-5.)

Plaintiffs seek to compel the Secretary to include in the administrative records the following materials:

1. Other than those already designated, the complete and "trimmed" version of all MedPAR files (such as the FFYs 2000 and 2001 MedPAR files), Impact files, and other data files (including HCRIS files) before the Secretary when she established the outlier thresholds for FFYs 2004-2006;
2. All public comments received by the Secretary addressing the outlier thresholds for FFYs 2004-2006, including the Federation of American Hospitals' FFY 2004 comment seeking a threshold of $25,375 for that FFY, or other evidence confirming that she properly considered all such comments during the Rulemakings;
3. The data used by the Secretary to "approximate" the CCRs from tentatively-settled hospital cost reports for the purpose of setting the FFY 2004 threshold;
4. All data used by HCDI, the Secretary's contractor, to develop the outlier thresholds for FFYs 2004-2006 on the Secretary's behalf, or other evidence describing such data and the results of HCDI's analysis of such data;
5. The Secretary's Outlier Correction Interim Final Rule ("IFR") received by the Office of Management and Budget for review on February 12, 2003, and all non-privileged communications between the Secretary and OMB relating to the outlier thresholds for FFYs 2004-2006; and
6. The March 11, 2003 testimony of then CMS Administrator Thomas Scully, to Congress regarding outlier payments.

(Pls.' Mot. to Compel Def. to Complete the Admin. Rs. ("Mot."), May 22, 2013 [Dkt. No. 97] at 3.)  In addition, plaintiffs seek to compel the Secretary to produce a log of documents she has withheld on the grounds of privilege.  (*Id.* at 39-42.)  The Court first addresses several overarching legal issues, and then it will consider each of the above classes of materials that plaintiffs seek to compel.

**ANALYSIS**

## I.  LEGAL STANDARD

The statutory framework governing this case is set forth in this Court's July 5, 2011

Memorandum Opinion, and the law governing this motion is presented in detail in a companion

case.  *See Banner Health v. Sebelius*, -- F. Supp. 2d. --, 2013 WL 2112169 (D.D.C. May 16,

2013) ("*Banner Health I*"), *reconsideration granted in part*, 10-cv-1638, Dkt. No. 96 (D.D.C.

July 30, 2013) ("*Banner Health II*").  Therefore, this Court will only summarize the governing

principles of law.

Judicial review of plaintiffs' claims under the Medicare Act rests on 42 U.S.C. §

1395oo(f)(1), which incorporates the Administrative Procedure Act ("APA").  *See* 42 U.S.C. §

1395oo(f)(1) ("Such action[s] . . . shall be tried pursuant to the applicable provisions under

chapter 7 of Title 5.").  Review of agency rulemakings under the APA requires a court to

"review the whole record or those parts of it cited by a party."  5 U.S.C. § 706.  "The 'whole'

administrative record . . . consists of all documents and materials directly or indirectly

considered by agency decision-makers and includes evidence contrary to the agency's position."

*Stainback v. Sec'y of Navy*, 520 F. Supp. 2d 181, 185 (D.D.C. 2007) (internal quotation marks

omitted).  "If a court is to review an agency's action fairly, it should have before it neither more

nor less information than did the agency when it made its decision."  *Walter O. Boswell Mem'l*

*Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984).

"[A]n agency is entitled to a strong presumption of regularity that it properly designated

the administrative record." *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of*

*Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006).  Thus, "[s]upplementation of the administrative

record is the exception, not the rule."  *Id.*  Nonetheless, an "agency may not skew the record by

excluding unfavorable information but must produce the full record that was before the agency at the time the decision was made." *Blue Ocean Inst. v. Gutierrez*, 503 F. Supp. 2d 366, 369 (D.D.C. 2007). Nor may an agency exclude information simply because it did not rely on it for its final decision. *Banner Health I*, 2013 WL 2112169, at *9.

"An administrative record may be 'supplemented' in one of two ways – either by (1) including evidence that should have been properly a part of the administrative record but was excluded by the agency, or (2) adding extra-judicial evidence that was not initially before the agency but the party believes should nonetheless be included in the administrative record." *WildEarth Guardians v. Salazar*, 670 F. Supp. 2d 1, 5 n.4 (D.D.C. 2009). Here, plaintiffs only seek supplementation on the first ground – that evidence before the decision maker at the time of the decisions has been excluded from the record. (Pls.' Reply to Def.'s Opp'n to Pls.' Mot. to Compel ("Reply"), July 18, 2013 [Dkt. No. 103] at 2.)

Supplementation on this ground is appropriate only under three "unusual circumstances": "(1) if the agency deliberately or negligently excluded documents that may have been adverse to its decision, (2) if background information was needed to determine whether the agency considered all the relevant factors, or (3) if the agency failed to explain administrative action so as to frustrate judicial review." *See City of Dania Beach v. F.A.A.*, 628 F.3d 581, 590 (D.C. Cir. 2010) (internal quotation marks and citations omitted). Further, to rebut the presumption of regularity, parties seeking supplementation must also introduce non-speculative, concrete evidence to support their belief that the specific documents allegedly missing from the administrative record were directly or indirectly considered by the actual decision makers involved in the challenged agency action. *See WildEarth Guardians*, 670 F. Supp. 2d at 5; *see also Banner Health I*, 2013 WL 2112169, at *10. In this regard, the parties seeking

supplementation "must identify the materials allegedly omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are 'likely' to exist as a result of other documents that are included in the administrative record." *Banner Health I*, 2013 WL 2112169, at *10.

## II.    DISCUSSION

### A.    GENERAL ISSUES

Before turning to the specific requests, the Court must address several general arguments raised by the parties.

#### 1.    Timeliness of the Motion

The Secretary first argues that plaintiffs' motion to compel is untimely because the plaintiffs waited until mid-way through summary judgment briefing to file their motion. (Secretary's Opp'n to Pls.' Mot. to Compel ("Opp'n"), June 20, 2013 [Dkt. No. 102] at 12-13.) Although plaintiffs' filing of their motion to compel *after* they filed their cross-motion for summary judgment (which cites to several of the documents at issue in their motion to compel) is somewhat perplexing, any late filing of this motion was harmless, and thus, the Secretary's argument that the motion should be denied in full as untimely is rejected.

#### 2.    Duty to Confer

The Secretary also argues that six of plaintiffs' requests within their motion to compel should be denied because plaintiffs failed to confer with the Secretary regarding those requests in accordance with Local Civil Rule 7(m). (Opp'n at 11-12.) In particular, the Secretary points out that plaintiffs did apprise the Secretary of their intent to compel production of the six classes of materials, but failed to confer with the Secretary regarding their intent to seek to compel the Secretary to (1) "provide further information about documents the Secretary has not been able to

locate;" (2) "'reconstitute' the administrative record for the fiscal year 2004 fixed loss threshold determination;" (3) create a privilege log; (4) produce "data employed in formulating proposed rules;" (5) produce "underlying source material used to generate other data;" and (6) produce "data supposedly provided to the Secretary by the Office of Management and Budget or by 'CMS actuaries.'" (Opp'n at 12; *see also* e-mail from Robert L. Roth to James Luh, May 20, 2013 [Dkt. No. 102-1] (listing documents plaintiffs would seek in their motion to compel).)

In reply, plaintiffs admit that they did not discuss the specifics with the Secretary of every request prior to their filing of the motion. (Reply at 24-25.) Nonetheless, plaintiffs urge the Court to consider the motion as to those requests, arguing, *inter alia*, that Local Rule 7(m) does not require that "every detail of every specific request contained within a nondispositive motion be discussed in its entirety with opposing counsel" and that, in any event, the Secretary was in fact on notice of plaintiffs' belief that the materials now sought belong in the administrative records. (*Id.* at 24-25 & n.26.)

Local Civil Rule 7(m) states that "[b]efore filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel . . . in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is opposition, to narrow the areas of disagreement." L. Civ. R. 7(m). The rule requires that the parties "try[] in good faith to achieve its objectives," which means they must take "real steps to confer." *U.S. ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency*, 456 F. Supp. 2d 46, 52 (D.D.C. 2006), *aff'd*, 530 F.3d 980 (D.C. Cir. 2008). It therefore serves the important salutary purpose of "promot[ing] the resolution of as many litigation disputes as possible without court intervention, or at least . . . forc[ing] the parties to narrow the issues that must be brought to the court." *Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006). Failure to comply with the rule

may result in a denial of the motion.  *See id.*; *see also U.S. ex rel. K& R Ltd. P'ship*, 456 F. Supp. 2d at 52.

Although some of plaintiffs' requests have, or should have, been known to the Secretary for some time, the Court is concerned by plaintiffs' lack of candor in providing full notice to the Secretary of exactly what they intended to compel.  Considering the lengthy and voluminous history of this case and the well-established rule that motions to compel must identify the materials sought to be compelled with "sufficient specificity," *Banner Health I*, 2013 WL 2112169, at *10, the function of the Rule 7(m) to "narrow the issues that must be brought to the court," *Ellipso*, 460 F. Supp. 2d at 102, is particularly important here.

That the Secretary would have opposed all of the undisclosed requests (Reply at 24) is beside the point.  The purpose of the Rule is to "promote," *not* "ensure," the resolution of as many issues as possible without court intervention.  *See Ellipso*, 460 F. Supp. 2d at 102; *cf. United States v. Sci. Applications Int'l Corp.*, 555 F. Supp. 2d 40, 47 (D.D.C. 2008) ("The fact that [the defendant] believed 'that the government would not be willing to resolve the problems . . . short of this Court's intervention' does not change the fact that it was under an obligation to make a 'good faith effort . . . to narrow the areas of disagreement.'").  Likewise, that plaintiffs fully complied with Rule 7(m) for a significant portion of their motion to compel does not save those requests for which they did not comply.  The Rule cannot function to "narrow the issues that must be brought to the court" if parties do not confer as to *all* of the issues they plan to raise. *See Abbott GmbH & Co. KG v. Yeda Research & Dev., Co.*, 576 F. Supp. 2d 44, 48 (D.D.C. 2008) (finding that defendant's failure to provide detail on scope of motion to exclude "ma[de] it

difficult, if not impossible, for the parties to engage in fruitful discussions" to "narrow the issues"); *Ellipso*, 460 F. Supp. 2d at 102.[1]

Thus, the Court concludes that plaintiffs' counsel should have conferred with the Secretary pursuant to Rule 7(m) regarding the additional forms relief plaintiffs would seek through their motion to compel. Accordingly, plaintiffs' motion as to those additional requests is denied as violating both the spirit and text of the Local Civil Rule 7(m).[2]

### 3. Presumption of Regularity

Plaintiffs repeatedly assert that supplementation of the administrative records with the requested materials is appropriate – indeed, required – because they have rebutted the presumption of regularity for the administrative records. (*See, e.g.*, Mot. at 10-11, 25-26, 27, 28, 47; Reply at 1-6, 8, 15, 23.) In addition, plaintiffs seek a general order from this Court compelling the Secretary to "complete" the FFYs 2004-2006 administrative records by including "[a]ll [m]aterials [n]ecessary to [p]ermit [m]eaningful [j]udicial [r]eview" of the outlier threshold determinations. (Mot. at 23; *see also id.* at 38 (requesting order compelling Secretary to "produce the full [administrative records] for FFYs 2004-2006").) Contrary to plaintiffs' belief,

---

[1] This is not to say parties must discuss every detail of a forthcoming non-dispositive motion during a Rule 7(m) conference, but rather that the issues discussed must fairly encompass all issues ultimately raised in the motion, such that the parties have a genuine opportunity to resolve or narrow the issues brought to the court.

[2] The Court, however, does not deny plaintiffs' request for a privilege log on this ground. In its September 10, 2013 Memorandum Opinion, the Court withheld judgment on the merits of plaintiffs' request for a privilege log until its consideration of the motion to compel. (*See* 9/10/13 Mem. Op. and Order [Dkt. No. 111] at 11-12 & n.4.) In accordance with that decision, the Court will consider plaintiffs' request for a privilege log on the merits, despite plaintiffs' failure to comply with Local Civil 7(m). *See infra* at 24-25.

The Court also notes that even if plaintiffs had complied with Local Civil Rule 7(m), it would deny those requests on the merits. Plaintiffs' requests either seek further discovery (which has been closed), underspecified or speculative materials, or raw data unnecessary for effective judicial review, and plaintiffs have failed to demonstrate the "unusual circumstances" required for supplementation of an administrative record.

they have not rebutted the presumption of regularity, and thus, the Court denies plaintiffs' general request.

Plaintiffs first recycle their previously rejected argument that Magistrate Judge Robinson has already found that the presumption of regularity had been rebutted. (*See* Mot. at 10-11.) As this Court noted in its September 10, 2013 Memorandum Opinion, the magistrate judge expressly rejected that position during a March 13, 2013 hearing. (*See* 9/10/13 Mem. Op. and Order [Dkt. No. 111] at 6 n.1 (citing 3/13/13 Mot. Hr'g Tr. at 38 ("[T]he Court has made no finding that the record which was filed by the Defendant is incomplete, and the Court has made no finding with respect to whether or not any presumption of completeness is or is not warranted. The Court's findings concerned only the very narrow matter which this Court was asked to address, and that is whether there was a basis upon which to allow discovery as to whether or not the administrative record is complete.").) *See also Banner Health I*, 2013 WL 2112169, at *14 ("[T]he record in *District Hospital Partners* reveals that Magistrate Judge Robinson did *not*, in fact, make any determination that the administrative record filed by the Secretary in that case is incomplete . . . . Nor has Magistrate Judge Robinson found that the *District Hospital Partners* plaintiffs have defeated the presumption of regularity with respect to the administrative records for any of the rulemakings at issue in that case.").

Plaintiffs' arguments that this Court should find that the presumption of regularity has been rebutted fare no better. Of course, the presumption of regularity "is just that – a presumption – and may be overcome." *See Fund for Animals v. Williams*, 245 F. Supp. 2d 49, 57 (D.D.C. 2003), *vacated on other grounds sub nom. Fund for Animals v. Hogan*, 428 F.3d 1059 (D.C. Cir. 2005). Plaintiffs assert that the presumption is overcome here because the Secretary "has indisputably failed to produce the complete [administrative records] for FFYs

2004-2006 and has also refused to certify that all records, data or other materials before the Secretary when she set the outlier thresholds for those FFYs by rulemaking have been produced." (Mot. at 27.) However, these arguments are insufficient to overcome the presumption of regularity in this case.

First, the only administrative record that is "indisputably" incomplete is that for FFY 2004, which the Secretary has designated as a "partial administrative record" and for which an unidentifiable number of public comments remain missing. (Opp'n at 18-21.) However, plaintiffs have not pointed to any evidence that the Secretary failed to act with due diligence in searching for the missing comments or has otherwise improperly omitted comments. Moreover, plaintiffs have failed to demonstrate that the loss of these comments necessarily renders the record so bear as to make effective judicial review impossible. *See Banner Health I*, 2013 WL 2112169, at *13.[3] And, even more importantly, plaintiffs provide no authority for the proposition that the Secretary's acknowledged loss of some public comments from one year in a massive administrative record covering three years constitutes grounds for jettisoning the presumption of regularity. *See id.* (declining to rebut the presumption of regularity on account of missing comments in FFY 2004 IPPS administrative record).

Nor do plaintiffs provide authority for the proposition that the Secretary's failure to "certify" that she has filed a complete administrative record defeats the presumption of regularity. Indeed, courts have consistently held the opposite. *See id.* at *11 (denying the claim that a "purportedly inadequately worded certification – or even the complete absence of a certification – defeats the presumption of regularity"); *cf. Ravulapalli v. Napolitano*, 840 F.

---

[3] Plaintiffs assertion that, because the Secretary could not find all of the comments submitted as part of the FFY 2004 IPPS rulemaking process, this Court "should draw the reasonable inference that the Secretary did not in fact properly consider all public comments relating to her FFY 2004 rulemaking" (Mot. at 29) lacks any basis in the record. The Secretary's loss of comments does not support any inference that the Secretary failed to consider those comments in the first instance. *See infra* at 15.

Supp. 2d 200, 206 (D.D.C. 2012) ("The lack of certification, without more, certainly does not rise to the level of 'clear evidence' necessary to overcome the presumption of regularity.").

Accordingly, plaintiffs have not rebutted the presumption of regularity, nor will the Court compel the Secretary to "complete" the record by adding any and all documents necessary to permit meaningful judicial review. *See Banner Health I*, 2013 WL 2112169, at *14. Plaintiffs must instead proceed under the narrowly-defined exceptions to the general prohibition against supplementation of the administrative record for each requested class of materials. *See City of Dania Beach*, 628 F.3d at 590.

### B. MATERIALS PLAINTIFFS SEEK TO COMPEL

#### 1. Data Files

Plaintiffs seek to compel the Secretary to produce several different data files as part of the FFY 2004 administrative record. "[D]ata files and data analysis considered during agency rulemaking are necessarily subject to the same standards governing supplementation of the administrative record as reports, draft rules, or any other item of information." *Banner Health I*, 2013 WL 2112169, at *21. Thus, plaintiffs must both demonstrate with "concrete evidence" that the data sought were actually considered by the Secretary and identify that data with "sufficient specificity." *Id.* Moreover, plaintiffs' bare desire to replicate each calculation contained within the Secretary's analysis – without more – will not suffice to justify supplementation, as "[t]here is no general requirement that the [Secretary] include in the record the data underlying each factor" considered in its decision. *See Todd v. Campbell*, 446 F. Supp. 149, 152 (D.D.C. 1978). Additionally, plaintiffs must – as always – demonstrate the presence of one or more of the three "unusual circumstances" necessary to justify supplementation. *See City of Dania Beach*, 628

F.3d at 590.  With these principles in mind, the Court turns to plaintiffs' three distinct requests for data files.

First, plaintiffs seek to compel the Secretary to produce the FFYs 2000 and 2001 MedPAR data files.  (Mot. at 29.)  The Secretary's Rule 30(b)(6) designee, Tzvi Hefter, stated that the Secretary used the FFY 2000 MedPAR data file to determine the FFY 2004 outlier threshold.  (*See* Tzvi Hefter Dep. Tr. ("Hefter Dep."), Nov. 1, 2012 [Dkt. 84-1] at 15.)  Similarly, Mr. Hefter stated that the Secretary used the FFY 2001 MedPAR to calculate the outlier threshold in the FFY 2004 IPPS proposed rule, and the Secretary now concedes that the data had been used to "calculate the inflation factors employed for the fiscal year 2004 fixed loss threshold determination."  (*Id.* at 61-62.)  Thus, there is no doubt that the Secretary utilized the FFYs 2000 and 2001 MedPAR data as part of the FFY 2004 IPPS rulemaking process.

Nonetheless, the Secretary correctly argues that she need not produce the FFYs 2000 and 2001 MedPAR files because she "is not required to include in the administrative records . . . the underlying source data used . . . to generate the inflation adjustments employed in the [her] projections."  (Opp'n at 35.)  Generally, "the Court does not need to examine the raw data in order to determine whether or not the [Secretary's] decision was arbitrary and capricious or otherwise not in accordance with law," *Todd*, 446 F. Supp. at 152, and "requiring an agency to produce source data upon source data so that its analysis can be replicated in minute detail would appear, in most instances, to exceed the bounds of arbitrary and capricious review."  *Banner Health I*, 2013 WL 2112169, at *21.  In this case, although plaintiffs have demonstrated that the Secretary did indeed utilize the FFYs 2000 and 2001 MedPAR data to calculate inflation factors for the FFY 2004 IPPS Final Rule, they have not demonstrated in what way the raw data is necessary for this Court's review of the outlier threshold determination.  Accordingly, the Court

will not require the Secretary to supplement the FFY 2004 administrative record with the FFYs 2000 and 2001 MedPAR files.

Plaintiffs also seek the inclusion of "trimmed" versions of those MedPAR data files the Secretary has already included in the FFYs 2004-2006 administrative records. (*See* Mot. at 30-31.) During his deposition, Mr. Hefter testified that the Secretary would "clean[]" the MedPAR data before calculating outlier thresholds, and that this process of "cleaning of the data isn't specifically addressed in the rule itself." (Hefter Dep. at 126-27.) Plaintiffs argue that Mr. Hefter's testimony as to "cleaning" or "trimming" data indisputably demonstrates that the Secretary, by producing "un-trimmed" MedPAR files, provided data that "irrefutably was *not* the data that was 'before the decision makers with respect to the challenged rulemakings,'" because it is impermissibly over-inclusive. (Mot. at 30; Reply at 12.) They explain: "Simply put, while the data produced in the records *includes* data that the Secretary *drew from* to calculate the thresholds at issue, it was *not* the actual data subsets that the Secretary incorporated into her calculations, formulas, and algorithms for this purpose." (Mot. at 30.)

Plaintiffs misrepresent Mr. Hefter's testimony. His testimony actually clarifies that the process of "trimming" involved neither the modification of the MedPAR files currently in the administrative record, nor the creation of new MedPAR files not in the record. (*See* Hefter Dep. at 149 ("[T]he file doesn't change. We don't change the data.") Instead, it is merely a description of an analytical process that excludes certain data points from the ultimate analysis without expunging them from the data set. (*See id.* at 160.) Indeed, Mr. Hefter stated explicitly that "[t]he MedPAR file is . . . the file that we gave to you. That entire file is used in a data run. In that data run certain elements are pulled from that. But the data file that you were presented is the data that was before the decision maker." (*Id.* at 53-54.)

13

Considering Mr. Hefter's clarifications about the "trimming" process, plaintiffs fail to provide any non-speculative basis for a finding that distinct, smaller "trimmed" versions of MedPAR files in fact exist. Accordingly, as held in *Banner Health I*, 2013 WL 2112169, at *24, plaintiffs' request to supplement the record with "trimmed" MedPAR files will be denied.[4]

Plaintiffs also seek to compel the Secretary to produce "Impact files, and other data files . . . before the Secretary when she established the outlier thresholds for FFYs 2004-2006." (Mot. at 3.) This generic request fails for two reasons. First, plaintiffs fail to identify with any specificity the data they request, but instead, they rely only on the generic – and circular – argument that the Secretary must provide all data "before" her when she made her threshold determinations. *See Banner Health I*, 2013 WL 2112169, at *14. Second, even assuming plaintiffs had identified specific data sets, they do not (nor have they attempted to) demonstrate the existence of any "unusual circumstances" justifying supplementation. *See City of Dania Beach*, 628 F.3d at 590.

## 2. Public Comments

Plaintiffs next seek to compel the Secretary to produce "*all* public comments" submitted as part of the FFY 2004 IPPS rulemaking proceedings. (Mot. at 28.) On October 31, 2011, the Secretary admitted that she was had been unable to locate three boxes of public comments received for the FFY 2004 IPPS rulemaking process and therefore filed only a partial administrative record for the FFY 2004 threshold determinations. (*See* Def.'s Notice of Filing Admin. R., Oct. 31, 2011 [Dkt. No. 30]; *see also* Decl. of Jim Wickliffe, Oct. 28, 2011 [Dkt. No. 30-1].) The parties now debate precisely how many public comments for the FFY 2004 IPPS rulemaking the Secretary has been unable to find, as well as how many of those public comments

---

[4] Plaintiffs' argument for "trimmed" MedPAR data files also fails for the more fundamental reason that the Secretary was not required to include MedPAR files in the administrative record in the first instance. *See supra* at 12-13.

need to be part of an administrative record relating to the outlier threshold determination. (*See* Mot. at 28; Opp'n at 20-21.)

Despite the Secretary's concession that she considered at least one of the lost comments when making her FFY 2004 outlier threshold determination (Opp'n at 19-20), plaintiffs have failed to demonstrate any "unusual circumstances" to require the Court to compel the Secretary to engage in the useless task of producing what she appears not to be able to locate. Plaintiffs do not question the Secretary's efforts to find these comments. (*See* 6/22/12 Status Hr'g Tr. [Dkt. No. 81] at 12 ("[W]e now know definitively that the Secretary has tried with a fair amount of diligence to produce all the comments and hasn't been able to do that.").) Likewise, plaintiffs have not pointed to any evidence – beyond the missing comments themselves – that the Secretary has improperly omitted comments because of their adversity to her decision.[5] Nor have plaintiffs provided any evidence to support their assertion (Mot. at 28) that the loss of these comments renders the record so bear as to make effective judicial review impossible. *See Banner Health I*, 2013 WL 2112169, at *13.[6] Accordingly, the Court denies plaintiffs' request to compel the Secretary to produce the lost public comments.[7]

However, plaintiffs' motion is granted with respect to the public comment submitted by the Federation of American Hospitals ("FAH") for the FFY 2004 IPPS rulemaking. (Mot. at 29.)

---

[5] For this reason, the Court also denies plaintiffs' request for an order requiring the Secretary to "attempt to find alternative sources from which to obtain copies of the missing comments and CMS' responses to such comments." (Mot. at 38.)

[6] Further, plaintiffs provide no authority to support the issuance of an order compelling the Secretary to produce those lost comments. Indeed, without evidence that the Secretary is withholding, or failed to search diligently for, the missing comments, it is unclear what redress such an order would even afford.

[7] Plaintiffs also request in the alternative that the administrative record be deemed to include "other evidence confirming that [the Secretary] properly considered all such comments during the Rulemakings." (Mot. at 3.) The Court denies this request on the ground that plaintiffs have offered no authority to suggest that such "evidence" should be treated as part of the administrative record. *See Banner Health I*, 2013 WL 2112169, at *29.

The Secretary argues that since she "has already agreed that [the FAH comment] can be introduced by the plaintiffs and cited in summary judgment proceedings," plaintiffs' request to compel production of the document is "immaterial." (Opp'n at 16.) The Secretary's argument is beside the point. The point is that if a document is in fact part of the administrative record, "the Court shall . . . compel the Secretary to file [it] as part of the administrative record and for the Court's convenient reference." *Banner Health I*, 2013 WL 2112169, at *27. The Secretary cannot avoid this process by merely designating a document as "citable" by plaintiffs.[8]

The Secretary next asserts that the FAH comment is not part of the administrative record because "she has not been able to confirm that the comment was in fact submitted" during the FFY 2004 IPPS rulemaking proceedings. (Opp'n at 17.) However, the Court finds that plaintiffs have carried their burden to show the FAH comment was before the Secretary. Plaintiffs filed with their motion to compel a date-stamped copy of the FAH comment provided to the Secretary on July 8, 2003. (*See* Mot., Exh. A [Dkt. No. 97-1].) The FAH comment extensively discusses the outlier threshold determination, criticizes the Secretary's then-proposed outlier threshold, and proposes that the outlier threshold should be set at $25,375. (*Id.* at 1-4.) Furthermore, the Final Rule discusses an un-identified public comment that proposed setting the outlier threshold at $25,375. S*ee Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2004 Rates* ("*FFY 2004 IPPS Final Rule*"), 68 Fed. Reg. 45346, 45477 (Aug. 1, 2003). Considering the fact that no comment in the FFY 2004 administrative record filed by the Secretary proposed a specific outlier threshold of $25,375, it is reasonable to infer

---

[8] Indeed, since a court's review of agency action necessarily is limited to the administrative record, *see Boswell Mem'l Hosp.*, 749 F.2d at 792, it is unclear what role, if any, a "citable" document *not* part of the administrative record would play in a court's evaluation of the merits. *Cf. infra* n.14; *Cnty. of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 78-79 (D.D.C. 2008).

that the FAH comment was considered by the Secretary during her FFY 2004 outlier threshold determination.[9]  *See Pac. Shores*, 448 F. Supp. 2d at 6.

Moreover, plaintiffs have made a sufficient showing that "unusual circumstances" warrant supplementation of the record with the FAH comment.  Because plaintiffs have produced a copy of the FAH comment, the Secretary cannot avoid supplementation merely because she cannot locate her own copy.  And considering the FAH comment's relevance and adversity to the Secretary's FFY 2004 outlier threshold determination, the Secretary's continued refusal to include the comment as part of the FFY 2004 administrative record is tantamount to the deliberate exclusion of a document "that may have been adverse to [her] decision."  *See Banner Health I*, 2013 WL 2112169, at *19; *Pub. Citizen v. Heckler*, 653 F. Supp. 1229, 1237 (D.D.C. 1986).  Therefore, the Court grants plaintiffs' motion to compel the Secretary to produce the FAH comment as part of the FFY 2004 administrative record.[10]

### 3.      Data Used to Approximate FFY 2004 CCRs

During the FFY 2004 IPPS rulemaking, the Secretary approximated cost-to-charge ratios because her normal data source (*i.e.*, tentative settled hospital cost reports) were unavailable at

---

[9] The Secretary contends that the FAH comment cannot be verified because plaintiffs earlier filed another copy of the FAH comment, and a comparison of the two versions reveals that "attachments at the end of the document are arranged in a different order, and the line and page breaks within the attachements differ between the two documents."  (Opp'n at 17-18 n.2.)  Nonetheless, the Court finds that the *text* of the attachments to each version is identical, and there is therefore no basis for concluding that either "version" of the FAH comment is illegitimate.

[10] In contrast, the Court denies plaintiffs' specific request to compel the Secretary to produce a full version of the public comment filed by the National Association of Public Hospitals and Health Systems.  (Mot. at 20, 37.)  Although only the first page of the comment is included in the FFY 2005 administrative record filed by the Secretary (*see* FFY 2005 Admin. R. at 1979.233), the Secretary states that she has reinspected the copy of the comment in her records, and that it does not contain any additional pages.  (Opp'n at 21-22.)  Because plaintiffs provide no evidence that the Secretary is withholding the remaining pages of the document to prevent effective judicial review, and in any event, the comment's summary line does not suggest that the comment discussed outlier threshold determinations, plaintiffs have failed to demonstrate any "unusual circumstances" to justify supplementation.

that time. *See FFY 2004 IPPS Final Rule*, 68 Fed. Reg. at 45476. Plaintiffs now seek

production of the data relied upon to estimate the cost-to-charge ratios. (Mot. at 16, 32-33.) The

Secretary correctly argues that she "is not required to include in the administrative records the

underlying source data used for the cost-to-charge ratios that are contained in the impact files."

(Opp'n at 35.) As noted above, requiring an agency to produce data underlying other data is

generally unnecessary for the effective judicial review of an agency action. *See Banner Health I*,

2013 WL 2112169, at \*21; *Todd*, 446 F. Supp. at 152. And, although the underlying data was at

least indirectly before the Secretary during the FFY 2004 rulemaking, plaintiffs fail to

demonstrate any "unusual circumstances" justifying supplementation.[11] Thus, the Court denies

plaintiffs' motion to compel this data.

### 4. HCDI Contractor Data

Plaintiffs next move to compel supplementation of the FFYs 2004-2006 administrative

records with information used or produced by HCDI, a contractor hired by the Secretary to

develop outlier thresholds for those years. (Mot. at 31-32.) Within this broad request, plaintiffs

fail to identify with "sufficient specificity" data, or even types of data, that HCDI used or

produced that is not included within the administrative records. *See Banner Health*, 2013 WL

2112169, at \*10. Thus, plaintiffs' unbounded request for all information considered by HCDI

fails for lack of specificity. *See id.* at \*21-22; *see also Blue Ocean*, 503 F. Supp. 2d at 369.

Moreover, even if plaintiffs had identified specific data before HCDI, they have not

demonstrated any "unusual circumstances" justifying a departure from the general rule against

---

[11] Although plaintiffs seem to suggest that the Secretary's failure to use the tentative settled
hospital cost reports calls into question whether the Secretary "considered all the relevant factors," *City of
Dania Beach*, 628 F.3d at 590, plaintiffs do not question the Secretary's assertion that this data was
unavailable. (*See* Mot. at 32-33.) Further, while Judge Kollar-Kotelly initially granted the *Banner Health*
plaintiffs' motion to compel the Secretary to produce data underlying the cost-to-charge ratios in that
case, *see Banner Health I*, 2013 WL 2112169, at \*25-27, she vacated that decision upon reconsideration.
*See Banner Health II*, slip op. at 18-20.

supplementation.  Plaintiffs' suggestion that the Secretary used HCDI as a "surrogate agency performing rulemaking functions" and that she now attempts to "'cabin' or conceal data that was before her at the time of the Rulemakings on the grounds that it was before" HCDI (Mot. at 32), lacks any basis in the record.  (*See* Michelle Short Dep. Tr., Sept. 28, 2012 [Dkt. No. 102-2] at 51-53.)  Accordingly, the Court denies plaintiffs' request for an order compelling the Secretary to add information used or produced by HCDI.

### 5. Outlier Correction Interim Final Rule

Plaintiffs also move to compel the Secretary to supplement the FFYs 2004-2006 administrative records with the Outlier Correction Interim Final Rule ("IFR") that the Secretary sent to the OMB for review in February 2003.  (Mot. at 33-36.)  In the IFR, the Secretary proposed an immediate reduction of the outlier threshold from $33,560 to $20,760 to account for outlier policy changes made to combat "turbo-charging"[12] and other abuses of the outlier program.  (*See* IFR, Feb. 13, 2003 [Dkt. No. 84-4] at 33-38.)  However, the Outlier Correction Final Rule did not include any adjustments to the outlier threshold to account for the outlier policy changes.  *See Medicare Program; Change in Methodology for Determining Payment for Extraordinarily High-Cost Cases (Cost Outliers) Under the Acute Care Hospital Inpatient and Long-Term Care Hospital Prospective Payment Systems*, 68 Fed. Reg. 34494, 34504-06 (June 9, 2003) ("maintaining the fixed-loss outlier threshold at $33,560 for the remainder of FY 2003").  And the FFY 2004 IPPS outlier threshold (determined only two months after the Final Outlier

---

[12] "Turbo-charging" refers to "abusive, excessive charging practices" (Def.'s Mem. of P. & A. in Support of Mot. for Summ. J., April 15, 2013 [Dkt. No. 91-1] at 10.), in which "rapid increases in charges by certain hospitals . . . resulted in their cost-to-charge ratios being set too high" and caused "excessive outlier payments to these hospitals."  *See Medicare Program; Change in Methodology for Determining Payment for Extraordinarily High-Cost Cases (Cost Outliers) Under the Acute Care Hospital Inpatient and Long-Term Care Hospital Prospective Payment Systems*, 68 Fed. Reg. 34494, 34496 (June 9, 2003).

Correction Rule) was set at $31,000 – over $10,000 higher than the Secretary proposed in the IFR. *See FFY 2004 IPPS Final Rule*, 68 Fed. Reg. at 45477.

Plaintiffs accordingly argue that the IFR was "before" the Secretary during her FFY 2004 IPPS rulemaking, and that supplementation is appropriate because the IFR demonstrates the Secretary's consideration of significant alternatives to the methodologies used for setting outlier thresholds for FFYs 2004-2006, and, therefore, the IFR's exclusion from those administrative records would prevent meaningful judicial review. (Mot. at 34-35.)

The Secretary first responds that the IFR is properly excluded from the administrative records solely because it is a "deliberative, predecisional document." (Opp'n at 27.) Although the IFR was predecisional, its public availability in accordance with Executive Order 12,866 undermines any claim of privilege. (*Id.* at 28 (conceding the IFR does not fall under the deliberative process privilege).) *See also Banner Health I*, 2013 WL 2112169, at *15; *Cnty. of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 75 (D.D.C. 2008). In addition, because the Secretary signed the IFR with full knowledge that it would become publicly available once the Outlier Correction Rule became final, this Court does not agree that it is "deliberative." *See Banner Health II*, slip op. at 11. The IFR's inclusion in the administrative record would not in any way be "injur[ious] to the quality of agency decisions," s*ee NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975), or "expose [the] agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *See Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987). Accordingly, this Court agrees with *Banner Health*'s conclusion that the IFR is not a "deliberative" document automatically excluded from the administrative record. *Banner Health II*, slip op. at 11.

The Secretary next argues that the IFR does not belong in the administrative record because it is an interim version of a rule that is not challenged here and therefore was not "before" the Secretary when she made the challenged decisions. (Opp'n at 28-29.) The Court disagrees. In *Banner Health I*, the Court compelled the Secretary to supplement one of the administrative records in dispute with the IFR because, *inter alia*, the "Interim Final Rule reflects views adverse to those finally adopted by the Secretary and . . . the Secretary considered – and indeed proposed to OMB – the Interim Final Rule as an alternative in its path to promulgation of the 2003 [Outlier Correction Rule] now challenged by Plaintiffs." 2013 WL 2112169, at *20. Although plaintiffs here, unlike those in *Banner Health I*, do not challenge the 2003 Outlier Correction Rule, the FFY 2004 IPPS rulemaking overlapped both temporally and substantively with the Outlier Correction rulemaking. There can be little doubt, therefore, that the Secretary's methodologies for determining, and conclusions regarding, the outlier threshold in the IFR were known to the Secretary only months later during the FFY 2004 IPPS rulemaking proceedings. These significant overlaps raise a reasonable inference that the Secretary did in fact consider the IFR when setting the outlier thresholds for FFY 2004.[13]

Further, the unacknowledged differences between the outlier threshold determinations in the IFR and the FFY 2004 IPPS Final Rule suggests that by excluding the IFR from the FFY 2004 administrative record, the Secretary "deliberately or negligently excluded documents that may have been adverse to [her] decision." *City of Dania Beach,* 628 F.3d at 590 (internal quotation marks omitted). Thus, plaintiffs have made a sufficient showing of "unusual

---

[13] Of course, the same cannot be said for the FFYs 2005 and 2006 IPPS rulemakings, which are separated from the IFR by one and two years, respectively. Plaintiffs have failed to offer concrete, non-speculative evidence that the Secretary actually reconsidered her tentative methodologies or conclusions from the IFR during those rulemakings. *See Marcum v. Salazar*, 751 F. Supp. 2d 74, 80 (D.D.C. 2010) ("Plaintiffs cannot merely assert that the . . . materials were relevant . . . . Rather, they must offer non-speculative grounds for their belief that the Service actually considered the . . . materials.").

circumstances" to support supplementation of the FFY 2004 administrative record with the IFR.

*Cf. Banner Health I*, 2013 WL 2112169, at \*20; *Pub. Citizen*, 653 F. Supp. at 1237

(supplementing the record with a draft of a proposed regulation because the documents "were

known to HHS at the time of their decisionmaking, are directly related to the decision made, and

are adverse to the agency's position"). For this reason, the Court will grant plaintiffs' motion to

compel the Secretary to include the IFR in the FFY 2004 administrative record.

### 6.       Administrator Scully's March 11, 2003 Testimony

Plaintiffs also seek to compel the Secretary to supplement the FFYs 2004-2006

administrative records with the March 11, 2003 statement and testimony of Thomas Scully, then-

Administrator of the Centers for Medicare and Medicaid Services ("CMMS"), before the Senate

Subcommittee on Appropriations. (Mot. at 18, 36.) In that testimony, Administrator Scully

noted that he had "argued strongly within the administration that we should lower the [outlier]

threshold" from $33,560 "back to $22,000 or $23,000" to account for the Secretary's plans to

address "program abuses" by turbo-charging hospitals in the Outlier Correction Rule. *See*

*Medicare Outlier Payments to Hospitals: Hearing Before a SubComm. of the S. Comm. on*

*Appropriations*, 108th Cong. 12-13 (2003) (statement of Thomas A. Scully, Admin., CMMS,

Dep't of Health and Human Servs.) ("Scully Testimony"). Plaintiffs argue that this Court should

compel the Secretary to supplement the administrative records in this case with the Scully

testimony because that "testimony confirms that, as of early March 2003, when the Secretary

was in the process of preparing the FFY 2004 IPPS Proposed Rule regarding outlier thresholds,

the Secretary believed that publication of the Outlier Correction Final Rule required a

simultaneous significant reduction of the outlier threshold to comply with Congress's directives

regarding outlier reimbursement." (Mot. at 36.)

However, the Court will not compel supplementation of the administrative records with the Scully testimony because, unlike the IFR, plaintiffs fail to provide concrete evidence that the Scully testimony was considered by the Secretary during the challenged rulemakings. Like the IFR, Administrator Scully's testimony referenced the Outlier Correction Rule and was given a few months before FFY 2004 IPPS rulemaking began. However, the Scully testimony specifically concerned the March 5, 2003 Outlier Correction Proposed Rule, which, unlike the IFR, contained no proposal for a mid-year downward adjustment of the outlier threshold. (*See* Scully Testimony at 9-11.) Administrator Scully's references to downward adjustments of the outlier threshold to account for changes in outlier policy were his personal opinions (s*ee id.* at 12 ("I feel strongly that . . . we should lower the threshold back to $22,000 or $23,000."); *id.* at 13 ("I happen to believe . . . that the correct number probably is in the midtwenties, if we fix the program abuses . . . ."); *id.* at 13 ("And so I do think the outlier threshold – my personal opinion is that it probably, if we fix the abuses, would be too high . . . ."), and not – as plaintiffs suggest – the "belie[fs]" of the Secretary. (*See* Mot. at 36.) An official's personal testimony regarding an earlier rulemaking constitutes no more than speculative evidence that the testimony was before the Secretary at the time of her later decisions. *See Marcum v. Salazar*, 751 F. Supp. 2d 74, 80 (D.D.C. 2010) (finding that "the materials' purported relevance" did not "constitute concrete evidence that the Service considered the materials, either directly or indirectly."). Thus, the Court denies plaintiffs' motion to compel as to the Scully testimony.[14]

---

[14] The Secretary concedes that although the Scully testimony is not part of the administrative record, plaintiffs may cite the testimony in their merits briefs, and this Court may consider the testimony in its merits determination, because it is a public document subject to judicial notice. (*See* Opp'n at 16-17.) The Court, however, notes that taking judicial notice is typically an inadequate mechanism for a court to consider extra-record evidence when reviewing an agency action. Because review of an agency decision is limited to the administrative record before the agency at the time of the decision, *see Boswell Mem'l Hosp.*, 749 F.2d at 792, judicial notice of an adjudicative fact *not* part of the administrative record generally is *irrelevant* to the court's analysis of the merits. Instead, a court may only consider an

## 7. Privilege Log

Finally, plaintiffs also seek to compel the Secretary either to produce a privilege log documenting any materials withheld from the administrative record on the grounds of the deliberative process privilege or submit those materials for *in camera* review by the Court. (Mot. at 39.) [15]  On this issue, "[t]he law is clear: predecisional and deliberative documents 'are not part of the administrative record to begin with,' so they 'do not need to be logged as withheld from the administrative record.'" *Oceana, Inc. v. Locke*, 634 F. Supp. 2d 49, 52 (D.D.C. 2009) (quoting *Nat'l Ass'n of Chain Drug Stores v. U.S. Dep't of Health & Human Servs.*, 631 F. Supp. 2d 23, 27 (D.D.C. 2009)), *rev'd on other grounds*, 670 F.3d 1238 (D.C. Cir. 2011). [16]

Plaintiffs nonetheless argue that a privilege log is necessary in this case "to properly identify what records were before the decision maker related to the calculation of the outlier

---

adjudicative fact subject to judicial notice that is *not* part of the administrative record if it qualifies for supplementation as extra-record evidence under *Esch v. Yeutter*, 876 F.2d 976 (D.C. Cir. 1989). *See Cnty. of San Miguel*, 587 F. Supp. 2d at 78-79 (noting that when plaintiffs asked court to take "judicial notice" of a government report when reviewing an agency action, they actually sought "the Court to review the report as extra-record evidence," and denying that request).

Plaintiffs argue in passing that the Court should compel the Secretary to supplement the administrative record with the Scully testimony as extra-record evidence under *Esch*. (*See* Mot. at 35 n.37.)  However, plaintiffs have not demonstrated that the Secretary either "(1) acted in bad faith in reaching [her] decision, (2) engaged in improper behavior in reaching [her] decision, (3) failed to examine all relevant factors, or (4) failed to adequately explain [her] grounds for decision." *Oceana, Inc. v. Locke*, 674 F. Supp. 2d 39, 45 (D.D.C. 2009).  That the Scully testimony is adverse to the Secretary's ultimate position in the challenged rulemakings does not rise to the level of a "strong showing" needed for extra-record supplementation. *Id.* at 46.

[15] In their reply brief, plaintiffs ask this Court to order the Secretary to "regenerate" the FFYs 2004-2006 administrative records "in accordance with instructions delineating predecisional/deliberative privilege and requiring inclusion of relevant materials from the proposes rules."  (Reply at 4; *see also id.* at 3-6.)  To the extent that plaintiffs mean something more than "supplement," the Court denies plaintiffs' request because plaintiffs failed to seek "regeneration" of the records in their opening brief.  *See Lindsey v. Dist. of Columbia*, 879 F. Supp. 2d 87, 95 (D.D.C. 2012).

[16] *See also Blue Ocean Inst.*, 503 F. Supp. 2d at 372 (finding that agencies need not produce a privilege log absent a "clear command from the court of appeals, particularly in light of the unequivocal statement by that court that such [privileged] materials are not a part of the administrative record when an agency decision is challenged as arbitrary and capricious").

thresholds in the rulemaking." (Mot. at 42) "However, the argument that a plaintiff and the Court should be permitted to participate in an agency's record compilation as a matter of course contravenes the standard presumption that the agency properly designated the Administrative Record." *Nat'l Ass'n of Chain Drug Stores*, 631 F. Supp. 2d at 28 (internal quotation marks omitted). Absent a rebuttal of the presumption of regularity, the Secretary's determination of which documents are privileged, and thus excluded from the administrative record, is conclusive. *Id.* As already noted, plaintiffs have not rebutted the presumption of regularity for the administrative records in this case. Therefore, the Secretary need not provide a privilege log, or produce any privileged materials for this Court's *in camera* review.

### C. MOTION TO STAY

Plaintiffs also move to stay briefing of the parties' cross-motions for summary judgment. (*See* Mot. at 43; Pls.' Mot. to Stay the Briefing on the Parties' Cross-Mots. for Summ. J., May 22, 2013 [Dkt. No. 98].) On July 24, 2013, the parties completed their briefing on the cross-motions for summary judgment in this case. The Court therefore denies plaintiffs' motion to stay as moot.

### CONCLUSION

For the foregoing reasons, the Court grants plaintiffs' motion to compel [Dkt. No. 97] is in part. The Secretary shall supplement the FFY 2004 administrative record for her outlier threshold determination with: (1) the FAH Comment [Dkt. No. 97-1] and (2) February 13, 2003 Outlier Correction Interim Final Rule [Dkt. No. 84-4] by September 30, 2013; and plaintiffs' motion to stay the briefing of cross-motions for summary judgment [Dkt. No. 98] is denied as moot. The parties shall contact chambers on October 2, 2013, at 3:30 p.m. to discuss further proceedings.

_____
/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date:   September 19, 2013